IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| William G. Colson, Jr. and Dorothy R. Colson, | ) ) ) |
| Plaintiffs, | ) C.A. No. 7:11-2143-HMH ) ) |
| vs. | ) **OPINION & ORDER** ) |
| Samson Hair Restoration, LLC and Geoffrey D. Stiller, M.D., | ) ) ) |
| Defendants. | ) ) |

This matter is before the court on Defendant Geoffrey D. Stiller's ("Dr. Stiller") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons explained below, the court grants Dr. Stiller's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs William G. Colson, Jr. ("Colson") and Dorothy R. Colson (collectively "Plaintiffs") commenced this civil action against Dr. Stiller and Samson Hair Restoration, LLC ("Samson") after Colson underwent numerous hair transplantation procedures in November and December 2009. Colson, a resident of Spartanburg, South Carolina, discovered Samson in late 2009, while conducting internet research on hair restoration treatment. (Pl. Resp. Opp'n Def. Mot. Dismiss Ex. 1 (Colson Aff. ¶ 1).) Following a meeting and numerous correspondences with Samson representatives, Colson underwent hair transplantation surgery on November 19, 2009. (Compl. ¶¶ 8-16.) The procedure was performed by Dr. Stiller in Charlotte, North Carolina, and Colson returned to South Carolina after the procedure was complete. (Id. ¶ 14.)

1

Colson traveled to Dr. Stiller's Charlotte, North Carolina office for follow-up treatment on multiple occasions in December 2009. (Def. Mem. Supp. Mot. Dismiss Ex. A (Stiller Aff. ¶ 7).) On December 9, 2009, Dr. Stiller noted that Colson developed scalp necrosis in the area of the hair transplant, and he recommended that Colson be admitted to the hospital "for an emergency debridement of [his] scalp." (Pl. Mem. Opp'n Mot. Dismiss Ex. 1 (Colson Aff. ¶ 3).) Dr. Stiller telephoned Dr. Michael J. Orseck ("Dr. Orseck"), a plastic surgeon at Spartanburg Regional Medical Center in South Carolina, to discuss further treatment. (Id. Ex. 1 (Colson Aff. ¶ 3).) Later that same day, Colson was admitted to Spartanburg Regional Hospital, and on the following day, Dr. Orseck "debrided the skin and subcutaneous tissue and bone of scalp and skull." (Compl. ¶¶ 20, 21.) Dr. Orseck thereafter referred Colson to Dr. Edmund F. Ritter in Augusta, Georgia, where Colson underwent multiple procedures throughout January and February 2010, to treat the complications that arose out of the hair transplantation surgery. (Id. ¶¶ 22-24.)

Plaintiffs commenced this civil action against Dr. Stiller and Samson on August 12, 2011. With respect to Dr. Stiller, Colson alleges claims of professional negligence, common law negligence, and loss of consortium arising out of the hair restoration procedures Dr. Stiller performed in November and December 2009. (Id. ¶¶ 27-32, 59-62.) Samson is a limited liability company that maintains a network of physicians who provide hair restoration treatment throughout the country. (Id. ¶¶ 2, 3.) From September 2008 to December 2009, Dr. Stiller contracted with Samson to perform hair transplantation surgery at Uplift Cosmetic Surgery, Laser & Skin Center in Charlotte, North Carolina. (Def. Mem. Supp. Mot. Dismiss Ex. A (Stiller Aff. ¶¶ 5, 7).) He maintained a South Carolina license to practice medicine and had

privileges at a hospital in Lancaster, South Carolina from September 2008 through June 2011, but he avers that he never met with any patients in South Carolina or performed any procedures there. (Id. Ex. A (Stiller Aff. ¶ 3).) In April 2010, Dr. Stiller moved to Spokane, Washington, and he currently practices medicine in Washington and Idaho. (Id. Ex. A (Stiller Aff. ¶¶ 2, 4).) On October 10, 2011, Dr. Stiller filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), contending that he was not subject to personal jurisdiction in South Carolina. The parties have fully briefed the issue, and this matter is ripe for review.

## II. Discussion of the Law

"When a court's personal jurisdiction over a defendant is contested, the burden is on the plaintiff to establish the existence of a ground for exercising such jurisdiction." ESAB Group, Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999). In the absence of an evidentiary hearing, the plaintiff must establish a prima facie showing of jurisdiction. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). The court, moreover, "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Id.

To assert personal jurisdiction over a non-resident defendant, the exercise of jurisdiction must be authorized by South Carolina's long-arm statute and must comport with the Due Process Clause of the Fourteenth Amendment. Young v. F.D.I.C., 103 F.3d 1180, 1191 (4th Cir. 1997). The Supreme Court of South Carolina has interpreted South Carolina's long-arm statute to extend to the constitutional limits imposed by federal due process. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). "Consequently, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) (internal quotation marks omitted).

Under the constitutional inquiry, a court has personal jurisdiction over those persons with "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (internal quotation marks omitted). Personal jurisdiction can be either general or specific, depending upon the degree of defendant's contacts with the forum state. General personal jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," thereby permitting the exercise of jurisdiction for actions unrelated to defendant's contacts with the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984). A defendant is subject to specific personal jurisdiction when the suit arises out of or is related to the defendant's contacts with the forum. Id. at 414 & n.8. In determining whether the due process requirements for specific personal jurisdiction exist, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted).

Plaintiffs contend that Dr. Stiller's contacts with South Carolina support both specific and general jurisdiction. Alternatively, Plaintiffs argue that because Samson does not contest personal jurisdiction in South Carolina, the court should exercise supplemental jurisdiction over their claims against Dr. Stiller. The court addresses each argument in turn.

## A. Specific Jurisdiction

In support of their contention that Dr. Stiller's contacts with South Carolina are sufficient to subject him to specific jurisdiction in South Carolina, Plaintiffs first argue that Samson's contacts with the forum state are attributable to Dr. Stiller. (Pl. Resp. Opp'n Mot. Dismiss 6-8.) It is undisputed that Samson solicited South Carolina residents through its website, sent a representative to meet with Plaintiffs in South Carolina, and directly communicated with Plaintiffs in South Carolina. (Id. at 2-3.) Samson does not challenge personal jurisdiction in South Carolina. Federal due process, however, requires that each defendant have the requisite minimum contacts with the forum state. See Calder v. Jones, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). Applying this principle in cases involving an out-of-state doctor defendant, courts consistently have refused to impute a medical entity's contacts with the forum to the physicians it employs, instead requiring plaintiffs to demonstrate an out-of-state doctor's independent contacts with the forum state. See, e.g., Boyd v. Green, 496 F. Supp. 2d 691, 701 (W.D. Va. 2007); see also Creech v. Roberts, 908 F.2d 75, 80 (6th Cir. 1990) ("The Court has been unable to find . . . any case in which a trial court has asserted personal jurisdiction over a nonresident doctor who committed a tortious act outside the forum state–even where the doctor worked for a hospital that advertised in the forum state. Indeed, every case reported seems to reach the opposite result."), overruled on other grounds by Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998). Accordingly, Samson's contacts with South Carolina are not imputable to Dr. Stiller.

Plaintiffs next contend that Dr. Stiller's personal contacts with South Carolina support specific jurisdiction. (Pl. Resp. Opp'n Mot. Dismiss 7.) In assessing Dr. Stiller's contacts with the forum state, the court is mindful that "[c]ases involving medical services are quite different from those involving other commercial activity." Wolf v. Richmond County Hosp. Auth., 745 F.2d 904, 911 (4th Cir. 1984). For doctor-patient relationships that extend beyond the borders of the forum state, courts have fashioned "special rules . . . to ensure that personal jurisdiction is asserted over a doctor only when she has personally availed herself of the privileges of conducting activities within her patient's state." Kennedy v. Freeman, 919 F.2d 126, 129 (10th Cir. 1990). As the Ninth Circuit observed:

> In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's (here the patient's) need. The need is personal and the services rendered are in response to the dimensions of that personal need. They are directed to no place but to the needy person herself. It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available.

Wright v. Yackley, 459 F.2d 287, 289-90 (9th Cir. 1972). Plaintiffs contend that specific jurisdiction exists because Dr. Stiller purposefully availed himself of the privileges of conducting activities in South Carolina. Specifically, Plaintiffs point to the fact that Dr. Stiller treated South Carolina patients, held privileges at a South Carolina hospital, maintained a South Carolina medical license, and communicated with a South Carolina physician concerning follow-up treatment for Colson. (Pl. Resp. Opp'n Mot. Dismiss 6-8.) None of these contacts with the forum state, however, gave rise to Plaintiffs' claims of negligence against Dr. Stiller.

6

Conversely, the doctor-patient relationship was formed in North Carolina, and the alleged acts of negligence at issue all occurred in North Carolina. (Def. Mem. Supp. Mot. Dismiss Ex. A (Stiller Aff. ¶¶ 6, 7).) Although Dr. Stiller's communication with Dr. Orseck in which he recommended that Colson be admitted to Spartanburg Regional Hospital is activity directed towards the forum state, this contact occurred after the alleged tortious procedures were performed and bears no nexus with Plaintiffs' claims of negligence. See Harlow v. Children's Hosp., 432 F.3d 50, 62 (1st Cir. 2005) (noting that for purposes of specific jurisdiction, "contacts [with the forum state] coming into existence after the cause of action arose will not be relevant"). Furthermore, Dr. Stiller's communication with Dr. Orseck was a direct consequence of Plaintiffs' residence in South Carolina and does not show that Dr. Stiller purposefully availed himself of the privilege of conducting activities in South Carolina. Based on the foregoing, Plaintiffs have failed to show that Dr. Stiller has the minimum contacts with South Carolina to subject him to specific jurisdiction.

**B.  General Jurisdiction**

Plaintiffs next argue that Dr. Stiller maintains the systematic and continuous contacts necessary to establish general jurisdiction in South Carolina. Dr. Stiller, however, has never resided in South Carolina, owned real or personal property in South Carolina, possessed a South Carolina bank account, or personally advertised his services to South Carolina residents. (Def. Mem. Supp. Mot. Dismiss Ex. A (Stiller Aff. ¶ 4).) Although he maintained a license to practice medicine in South Carolina from September 2008 to June 2011 and held hospital privileges at a South Carolina hospital, it is undisputed that he never performed any medical procedures in South Carolina. Viewed in a light most favorable to Plaintiffs, these contacts

7

demonstrate an intent at one time to practice in South Carolina, which alone cannot sustain general jurisdiction. See Sandstrom v. ChemLAWN Corp., 904 F.2d 83, 89 (1st Cir. 1990) ("We agree with the court below that preparations to do business at an indeterminate future date, without more, cannot be confused with actually doing business. . . . Such involvement is not the type of 'continuous and systematic' business activity which the concept of general jurisdiction embraces."). Plaintiffs have failed to show that Dr. Stiller's contacts with the forum state are continuous and systematic, and therefore, Dr. Stiller is not subject to general jurisdiction in South Carolina.

### C. Supplemental Jurisdiction

Plaintiffs alternatively argue that because personal jurisdiction over Samson is indisputable, the court should exercise supplemental jurisdiction over their claims against Dr. Stiller pursuant to 28 U.S.C. § 1367(a). (Pl. Mem. Opp'n Mot. Dismiss 9.) It is well established that a court is without authority to enter judgment against a defendant over whom the court lacks personal jurisdiction. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is an essential element of a district court, without which the court is powerless to proceed to an adjudication.") (internal quotation marks and alterations omitted). Although § 1367(a) permits a federal court to entertain pendent claims over which it would otherwise lack subject matter jurisdiction, federal due process still requires that a court have personal jurisdiction over each defendant. See Doppelt v. Perini Corp., No. 01 CIV. 4398(LMM), 2002 WL 392289, at *4 (S.D.N.Y. Mar. 13, 2002) (unpublished). Consequently, Plaintiffs' argument fails.

Because Dr. Stiller lacks the minimum contacts with South Carolina to sustain personal jurisdiction, the court grants his motion to dismiss.

It is therefore

**ORDERED** that Dr. Stiller's motion to dismiss, docket number 7, is granted.

**IT IS SO ORDERED.**

                                            s/Henry M. Herlong, Jr.
                                            Senior United States District Judge

Greenville, South Carolina
November 28, 2011